UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWIN MILLS, et al.,

    Defendants.

_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

## OPINION & ORDER
## DENYING THE GOVERNMENT'S MOTION FOR ORDERS AUTHORIZING RULE 17(C) SUBPOENAS AND COMPELLING PRODUCTION (Dkt. 470)

This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act (the "RICO" Act), 18 U.S.C. § 1961 et seq. The Government has filed a motion requesting orders authorizing the issuance of subpoenas duces tecum under Federal Rule of Criminal Procedure 17(c) and compelling the production of all documents and information Defendants Edwin Mills and Carlo Wilson have procured pursuant to court-issued subpoenas or orders (Dkt. 470). Defendants have filed a joint response in opposition to the motion (Dkt. 488), to which the Government replied (Dkt. 502).[1] For the reasons discussed below, the Court denies the Government's motion.

### I. BACKGROUND

A federal grand jury returned a second superseding indictment on February 28, 2018, charging the eleven defendants in this case with various crimes, including violations of the RICO Act. See generally 2d Superseding Indictment (Dkt. 292). That indictment claims that Defendants

---

[1] Because oral argument will not aid the Court's decisional process, the Government's motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

were members and associates of a criminal enterprise—the "6 Mile Chedda Grove" street gang in Detroit—one of whose purposes was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence." Id. at 2, 6. The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine. Id. at 5. The sale and distribution alleged was not limited to Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia. Id.

Five of the eleven defendants have since pleaded guilty. The six remaining defendants have been separated into two groups with separate trial dates. See 8/7/2018 Order (Dkt. 425). Group One, composed of four defendants who are not subject to the death penalty upon conviction, has a trial date of April 23, 2019. See Group One Scheduling Order (Dkt. 464); 9/21/2018 Status Conference (finalizing Group One trial date). Group Two, composed of two defendants who are death-penalty eligible, has a trial date of April 21, 2020. See Group Two Scheduling Order (Dkt. 475).

Defendants Edwin Mills and Carlo Wilson belong to Group Two and have each been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1); two counts of using and carrying a firearm during and in relation to a crime of violence causing death in violation of 18 U.S.C. §§ 924(c) and 924(j); two counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). See generally 2d

Superseding Indictment. On March 1, 2018, the Government filed its notice of intent to seek a sentence of death against Mills and Wilson (Dkt. 293).

## II. STANDARD OF DECISION

Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas duces tecum in federal criminal proceedings.[2] A subpoena issued pursuant to this rule "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The rule further provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." Id. The Court may also "permit the parties and their attorneys to inspect all or part of" those items when they arrive. Id.

The Supreme Court has repeatedly emphasized that Rule 17(c) was not intended to expand the scope of discovery in criminal cases. United States v. Nixon, 418 U.S. 683, 698-699 (1974) (noting the rule's "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials" (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)); see also United States v. Llanez-Garcia, 735 F.3d 483, 494 (6th Cir. 2013) ("Rule 17(c) is not meant to provide an additional way to secure pretrial discovery."); United States v. Jannuzzio, 22 F.R.D. 223, 228 (D. Del. 1958) ("[T]he purpose of a subpoena duces tecum is to enable a party to obtain evidence at the trial to use in support of his case—not to pry into the case of his adversary." (emphasis in original)). Thus, the moving party must satisfy the following four conditions before a Rule 17(c) subpoena will issue prior to trial: (i) the documents are evidentiary

---

[2] See also E.D. Mich. LCrR 17.1(b) ("A party seeking a subpoena for books, papers, documents, data, or other objects under Fed. R. Crim. P. 17(c) in advance of trial must seek prior approval from the court. An application for approval may be made ex parte. The subpoena must state that the requested items must be returned to the chambers of the assigned judge.").

3

and relevant; (ii) the documents are not otherwise procurable through the exercise of due diligence prior to trial; (iii) the party cannot properly prepare for trial without the pretrial production and inspection of the documents; and (iv) the application was made in good faith and is not a fishing expedition. Nixon, 418 U.S. at 699-700; United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990) (same).

The moving party must also show that the requested materials are admissible, as well as identify and describe the documents with sufficient specificity. See Nixon, 418 U.S. at 700. This latter specificity requirement ensures that a Rule 17(c) subpoena will not be used as a "fishing expedition to see what may turn up," and it is often the most difficult hurdle to overcome. United States v. Wittig, 250 F.R.D. 548, 552 (D. Kan. 2008) (citation and quotation marks omitted); United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006). A party's request will generally be sufficiently specific if "it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." Wittig, 250 F.R.D. at 552; see also United States v. Shanahan, 252 F.R.D. 536, 540 (E.D. Mo. 2008) ("As the period of time increases, so must the subpoena's particularity."). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met." United States v. Tucker, 249 F.R.D. 58, 62-63 (S.D.N.Y. 2008); accord Wittig, 250 F.R.D. at 552 ("The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents.").

### III. DISCUSSION

In its motion, the Government makes two requests. First, it seeks an order authorizing the issuance of Rule 17(c) subpoenas duces tecum regarding Defendants' medical and educational

records for use at any potential penalty-phase hearing. In particular, the Government is seeking subpoenas for the following information:

> Any and all records relating to Edwin Mills DOB: XX/XX/XXXX SSN: XXX-XX-XXXX and/or Carlo Wilson DOB: XX/XX/XXXX SSN: XXX-XX-XXXX, including but not limited to - (1) all records, of any type, related to Edwin Mills and/or Carlo Wilson, and (2) any transcripts documenting academic performance, reports of academic deficiencies, academic and or behavioral progress notes, counseling records, disciplinary records, attendance records, scholarship awards, individualized education plans, and any and all other documents or writings, including those stored on electronic media, from the Detroit Public School System and (3) all records, of any type, related to Edwin Mills and/or Carlo Wilson from:
>
> (1) The Detroit Public School System, c/o Office of the General Counsel, 3011 W. Grand Blvd. – Fisher Building 10th Floor, Detroit, MI 48202, and
>
> (2) Any Detroit area Health care provider, including the St. John's Hospital system, 22101 Moross Rd., Detroit, MI 48236.

Gov't Mot. at 5-6.

Second, the Government seeks an order compelling Defendants to disclose all documents and information they have obtained pursuant to any court-issued subpoena or order. The Court addresses each request in turn.

**A. Rule 17(c) Subpoenas**

Regarding its request for a subpoena for Defendants' medical records, the Government claims that Mills received treatment several times at St. John's Hospital in Detroit for injuries he sustained during "violence related incidents." Gov't Mot. at 3. The Government avers that, based on these prior injuries, the hospital records will demonstrate Mills's past violent conduct and will be relevant as an aggravating factor at a sentencing proceeding. Id. at 8. The Government further suggests that the medical records will be relevant to either "confirm or rebut medical and mental health claims by the defendant." Id. Although it never explicitly addresses the third Nixon

5

condition regarding whether this evidence is not otherwise procurable through due diligence, the Government does acknowledge privacy protections under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq., and the exception for production by means of a subpoena or court order. See Gov't Reply at 6 (citing 45 C.F.R. § 164.512; Doe v. United States, 253 F.3d 256 (6th Cir. 2001); United States v. Zamora, 408 F. Supp. 2d 295 (S.D. Tex. 2006)).

Regarding its request for a subpoena of Defendants' educational records, the Government states that both Mills and Wilson attended public schools in Detroit. Gov't Mot. at 3, 5. According to the Government, the information obtained from the Detroit Public School System is relevant because it will either confirm or rebut any potential mitigation claims offered by Mills and Wilson at sentencing. Id. at 8. The Government intimates that this evidence is not otherwise procurable because of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g. See Gov't Mot. at 8-9 (citing United States v. Pleau, No. CR 10-184-1 S, 2012 WL 4369302, at *2 (D.R.I. Sept. 24, 2012)). The Government further contends that the medical and educational records are admissible under the relaxed evidentiary standard of 18 U.S.C. § 3593. See Gov't Mot. at 8-9.[3]

Because it is the responsibility of the Court "to ensure that a subpoena secured under Rule 17(c) is for a proper purpose," United States v. Thompson, 310 F.R.D. 542, 545 (S.D. Fla. 2015), the Court does not need any assistance from the opposing party in applying the Nixon test. Nevertheless, Defendants raise several arguments in their response for why the Government has

---

[3] In particular, 18 U.S.C. § 3593(c) provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

failed to satisfy all the Nixon conditions required for the issuance of a Rule 17(c) subpoena, and, therefore, its requests amount to nothing more than fishing expeditions.

First, regarding their medical records, Defendants emphasize that the Government never offered a specific reason for why it was seeking Wilson's medical records, and, therefore, it has failed to establish why his records are evidentiary and relevant. Defs. Resp. at 11-12. As for Mills's medical records, Defendants note that the Government's proffered purpose for this evidence is to show his past violent conduct based on his medical treatment. Id. at 11. But according to Defendants, there is nothing to suggest in the discovery produced by the Government thus far, including Detroit Police Department reports, to suggest that Mills was anything more than a shooting victim receiving medical treatment; "there are no indicia in the reports that either shooting of Mr. Mills was gang related or precipitated in any way by violence on the part of Mr. Mills." Id. "If the police records don't contain anything like that, it is illusory to think that medical treatment records would." Id. Until Defendants give notice of mitigating factors based on their medical background to either confirm or rebut, the Government has failed to show how these records are evidentiary and relevant. Id. at 12.

Second, Defendants note that the sole justification the Government offered for seeking all of Defendants' educational records was to either confirm or rebut any potential mitigation claim at sentencing. Id. at 10. Again, because they have not provided notice of any mitigating factors, Defendants argue that these records are neither evidentiary nor relevant at this time. Id. at 10-12. In other words, without anything to confirm or rebut, the Government's purported need for this documentary evidence is speculative at best. Id. at 10; see also id. at 13 ("If the Government

7

simply waits, it will receive ample notice of all of Defendants' mitigation evidence, well before trial.").[4]

The Court agrees with Defendants that, at this time, the Government has failed to satisfy all of the requisite Nixon conditions for the issuance of its requested Rule 17(c) subpoenas. To begin, the Government seeks a subpoena for all of Defendants' medical records of any type from any healthcare provider in the Detroit area, but it only discusses the potential relevance of these records in the context of Mills and his prior medical treatment. In doing so, it has utterly failed to explain why any of Wilson's medical records are relevant to a penalty-phase proceeding if he is convicted at trial. For this reason alone, the Government's request for Wilson's medical records fails the Nixon test.

Aside from conjecture and speculation, the Government has also failed to adequately explain why all of Mills's medical records would be relevant for the proffered purposes of either establishing his alleged prior violent behavior or rebutting any potential mental health claim.

---

[4] Defendants also contend that any relevant educational or medical records will be procurable without a subpoena because the Court has already scheduled an August 1, 2019, deadline—more than eight months before the April 21, 2020, trial date—for the parties to "'submit a joint statement setting forth points of agreement and disagreement, regarding the nature and timing of disclosures pertaining to the penalty phase, including disclosures pursuant to Federal Rules of Criminal Procedure 12.2 and 16.'" Defs. Resp. at 13 (quoting 8/31/2018 Order at 2, ¶ 21 (Dkt. 475) (Group Two Scheduling Order)). According to Defendants, "there is a substantial likelihood that the Government will obtain necessary defense information prior to trial by way of the Court's scheduling order." Id. Because it agrees with Defendants that the Government has failed to demonstrate the relevancy of the requested documents under the Nixon test, the Court refrains from addressing the merits of this argument.

Defendants further argue that the Government has not explained why it cannot properly prepare for trial without the educational and medical records. Defs. Resp. at 13-14. Although Defendants are correct that the Government does not explain why it cannot prepare for trial without the educational and medical records, Rule 17(c) is not limited to pretrial matters and can be used for post-trial motions and sentencing. See United States v. Reid, No. 10-20596, 2011 WL 5075661, at *2 (E.D. Mich. Oct. 26, 2011) (collecting cases). Along those lines, perhaps it is better for courts to use the term "proceeding" as opposed to "trial" when discussing the Nixon conditions.

While a rational inference can be made that some of these medical records will likely contain information about the injuries Mills sustained and the subsequent treatment he received, the Government does not explain why these records would also contain any information about the underlying circumstances that gave rise to those injuries, including whether Mills was himself engaged in violent conduct as opposed to being a victim of another's violence, or whether Mills has ever sought mental health treatment. Without specifying what information is likely contained in the records, the Government can only speculate as to the contents of the medical records and their potential relevance at a penalty-phase hearing; this is simply insufficient for purposes of Rule 17(c). See United States v. Arditti, 955 F.2d 331, 345-346 (5th Cir. 1992) (stating that, without detailed information on the requested documents, a court is only left "to speculate as to the specific nature of their contents and its relevance"); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997) ("Conclusory allegations of relevance and admissibility are insufficient."); United States v. Jackson, 155 F.R.D. 664, 667 (D. Kan. 1994) ("Conjecture and speculation will not provide the lift to carry a movant over the three [Nixon] hurdles.").

Moreover, because the Government does not attempt to limit its request for "any and all" of Defendants' medical records to a particular time frame, healthcare provider, or type of medical treatment, the request can hardly be said to be sufficiently specific for purposes of Rule 17(c). See, e.g., United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the [party] is engaging in the type of 'fishing expedition' prohibited by Nixon."); United States v. Al-Amin, No. 1:12-CR-50, 2013 WL 3865079, at *7 (E.D. Tenn. July 25, 2013) ("Courts have also noted that 'any and all' requests are particularly suspect under the specificity prong of a Rule 17(c) analysis."); United States v. Reyes, 239 F.R.D. 591, 606 (N.D. Cal. 2006)

9

("Where, as here, a [party] requests any and all information related to a particular policy or procedure, courts have rejected such requests as an abuse of Rule 17(c)."). In other words, the Government is on a quintessential fishing expedition. Therefore, the Government's request for a Rule 17(c) subpoena for Defendants' medical records is denied.

Turning to its request for a subpoena for Defendants' educational records, the Government claims that these documents are relevant because they will either confirm or rebut any potential mitigation factors offered by either Mills or Wilson at a penalty-phase hearing. The Court disagrees.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). That "fact" must also be "of consequence in determining the action." Fed. R. Evid. 401(b). Defendants have not been convicted of any capital crimes, so the possibility of a penalty-phase hearing is presently speculative. More importantly, the Government's purported need to rebut mitigating factors is speculative because Defendants have not provided notice of any potential mitigating factors based on their educational background. Stated differently, in the absence of notice of Defendants' anticipated mitigating factors, whether these records are relevant to an issue that will be of consequence at a penalty-phase hearing is pure conjecture. The Government can only speculate about the potential relevancy of these educational records at this time, which is insufficient for Rule 17(c). See Wittig, 250 F.R.D. at 552-553 ("That the requested material is 'potentially' relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought."); United States v. Skeddle, 178 F.R.D. 167, 168 (N.D. Ohio 1996) ("The party issuing a subpoena must do more than speculate about the relevancy of the materials being sought."); accord United States v. Eden, 659 F.2d 1376, 1381 (9th Cir. 1981) (stating that "mere conclusory statements" of relevancy are insufficient to

10

satisfy the Nixon test). Because the Government has currently failed to carry its burden of establishing the relevance of Defendants' educational records, the Court denies the Government's request for a Rule 17(c) subpoena for Defendants' educational records at this time.[5]

### B. Pretrial Disclosure of Information Defendants Have Obtained Pursuant to a Court-Issued Subpoena or Order

The Government requests that, in accordance with Rule 17(c)(1), this Court order Mills and Wilson "to produce any and all documents and information obtained pursuant to a Court issued subpoena or order to the government for inspection and copying." Gov't Mot. at 10. Insofar as any documents and information are in the Court's custody or control, the Government requests that "those materials be produced or made available to the government for inspection and copying." Id.

In response, Defendants contend that disclosing any information they have obtained through independent investigation by means of a subpoena or court order exceeds what the Government is entitled to under Federal Rule of Criminal Procedure 16 and would violate certain constitutional guarantees, including the right to investigate and prepare a defense. See generally Defs. Resp. at 4-8. While there is a constitutional obligation for defense counsel to seek all reasonably available mitigating evidence in advance of trial, say Defendants, there is no corollary obligation to share all of this information with the Government. Id. at 5. In fact, allowing the Government to learn of Defendants' case in this fashion would have a "chilling effect on the defense's required obligation to investigate on behalf of their clients" by having to decide "whether investigating potential leads is worth tipping off the Government as to strengths and weaknesses

---

[5] The Government may urge the Court to revisit this issue in the parties' joint statement regarding the nature and timing of disclosures pertaining to the penalty phase. See 8/31/2018 Scheduling Order, ¶ 21 (Dkt. 475) (setting August 1, 2019, as the deadline to submit the joint statement).

11

of the ultimate case." Id. at 8. Thus, Defendants believe this issue should be resolved "in a manner that protects a defendant's right to compulsory process and freedom from government intrusion into defense counsel's potential strategies." Id. at 6. Based on the facts of this case, the Court agrees with Defendants.

Defendants' argument that disclosing subpoenaed items to the Government may reveal matters of constitutionally protected trial strategy was similarly at issue when courts addressed the permissibility of ex parte applications for criminal defendants seeking the issuance of subpoenas duces tecum under Rule 17(c). See, e.g., United States v. Sellers, 275 F.R.D. 620 (D. Nev. 2011); United States v. Tomison, 969 F. Supp. 587 (E.D. Cal. 1997); United States v. Beckford, 964 F. Supp. 1010 (E.D. Va. 1997); United States v. Reyes, 162 F.R.D. 468 (S.D.N.Y. 1995). Because a defendant must establish the Nixon conditions before a Rule 17(c) subpoena will issue, an application for the subpoena may require a defendant to reveal his or her trial strategy, witness list, or attorney-work product in order to convince the court that the requested material is relevant, admissible, and specific. Beckford, 964 F. Supp. at 1030; Reyes, 162 F.R.D. at 470; see also Tomison, 969 F. Supp. at 593-594 ("Since a defendant seeking pre-trial production must make a demonstration of relevancy, admissibility, and specificity, requiring that defendant share the showing with the government would effectively force the defendant to reveal his or her theory of the case." (citation and footnote omitted)). As the district court aptly stated in Beckford:

> Forcing the indigent defendant to confront the choice between issuing no trial subpoenas duces tecum (to preserve his theory of defense and thus rely on voluntary production of requested evidence) or disclosing his whole case to the Government before trial (to assure production of requested evidence) is an unconstitutional limitation on the defendant's right to compulsory process because the indigent's Sixth Amendment right to compulsory process for obtaining witnesses would mean little indeed if he were required to provide the Government with undue discovery in order to fulfill it.

964 F. Supp. at 1019 (citation, quotation marks, and alterations omitted).

Nevertheless, permitting a defendant to make an ex parte application for a subpoena duces tecum under certain circumstances does not mean that the subpoenaed materials can never be made available to the Government for inspection. See Sellers, 275 F.R.D. at 625 (granting defendant's motion for a subpoena, directing witness to produce designated items to the Clerk of the Court, and permitting both defense counsel and the government to inspect the items because "pretrial production of the photographs [will] enable defense counsel to provide pretrial discovery to the prosecution and to prepare trial exhibits"). Instead, Rule 17(c) expressly provides that the Court "may permit the parties and their attorneys to inspect all or part of" the subpoenaed items deposited with the Court. Fed. R. Crim. 17(c)(1) (emphasis added). Thus, it is within this Court's discretion to determine whether, on a case-by-case basis, the adverse party can inspect the subpoenaed materials. Reyes, 162 F.R.D. at 471; United States v. Daniels, 95 F. Supp. 2d 1160, 1162 (D. Kan. 2000) ("[Rule 17(c)] empowers the court to deny an adverse party the opportunity to inspect the documents.").

Because a defendant's trial strategy may be easily inferred from the subpoenaed documents, the Court recognizes the real possibility that permitting the Government to discover all of the information a defendant has obtained through a Rule 17(c) subpoena or court order could create an unenviable choice between the defendant preserving his theory of the defense and issuing no subpoenas duces tecum or disclosing his whole case to the Government before trial. See Beckford, 964 F. Supp. at 1019. In weighing the competing interests of Defendants' confidentiality and the need to ensure a fair and efficient trial in this case, the Court denies the Government's overly broad request for Defendants "to produce any and all documents and information obtained pursuant to a Court issued subpoena or order." Gov't Mot. at 10. The Court

nonetheless orders Defendants to produce copies to the Government of any documents obtained through a Rule 17(c) subpoena or court order that they intend to introduce at trial at the same time they make their Rule 16 discovery available to the Government. See Tomison, 969 F. Supp. at 597.

## IV. CONCLUSION

For the reasons stated above, the Court denies the Government's motion requesting orders authorizing the issuance of subpoenas under Federal Rule of Criminal Procedure 17(c) and compelling the production of all documents and information Defendants Edwin Mills and Carlo Wilson have procured pursuant to court-issued subpoenas or orders (Dkt. 470). Nevertheless, Defendants shall provide copies to the Government of any documents they have obtained through a Rule 17(c) subpoena duces tecum or court order that they intend to introduce at trial at the same time they make their Rule 16 discovery available to the Government.

SO ORDERED.

Dated: January 2, 2019  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge