UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1   EDWIN MILLS,

    Defendant.

Case No. 2:16-cr-20460

Hon. Mark A. Goldsmith
Mag. Judge R. Stephen Whalen

_____/

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING DISCOVERY**

## Introduction

In its opinion, the Court ordered the parties to meet and confer regarding outstanding discovery disputes. The parties conferred by telephone on March 15, 2019. No progress of any substance was made.

The Government and defense counsel discussed approximately 14 categories of dispute and did not reach any real agreement with respect to any of them. The Government is clearly not interested in sharing any information in its possession (especially any reports of witness interviews, regardless of whether they will be called at trial). The Government's positions:

- With respect to the request for defendant-specific discovery that may have been provided to other defendants, the Government refused to acknowledge whether any separate discovery was provided to any other defendant.

- With respect to codefendant statements the Government refused to provide any codefendant statements.

- The Government will not produce unredacted discovery until 30 days before trial.

- The Government declined to supply written responses to either of the two discovery letters sent to the government requesting discovery.

- The Government declined to provide a written explanation as why the report of Mr. Mills' post-arrest statement was not provided until two years after his arraignment.

- The Government declined to agree to produce any interview reports of any persons, because (three years after the crimes at issue), the government has not yet determined which witnesses it is going to call the trial.

- With respect to the request for any statements allegedly made by Mr. Mills to third parties (including jail informants), the Government's positions is that it has provided all reports of statements in possession of the U.S. Attorney's Office (but did not confirm whether any such statements were made or whether reports were in the possession of law enforcement agencies under the control of the U.S. Attorney's Office).

- With respect to the preservation of agents' original notes, the Government will only be producing notes that in its sole opinion show a discrepancy with the formal report.

- With respect expert reports (specifically global position satellite and cell tower experts), the Government stated that it has expert reports because no expert witnesses have been yet selected.

- With respect to "task force reports" (as set forth in pages 22-27 of Mr. Mills' original motion), the Government indicated that it will not be producing any further information in this regard.

The sum total of the discussion was that the Government simply (and repeatedly) said "no." Counsel for Mr. Mills notes that the Court has ruled on certain motions, and those opinions address certain aspects of Mr. Mills' requested relief. That being said, there are areas which require the Court's intervention.

## I. The Government has outstanding Rule 16 Obligations.

In *United States v. Mills* 2019 WL 76868, (Opinion Regarding the Jenks Act) the Court noted that "Federal Rule of Criminal Procedure 16(a)… 'requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control [that are material to the defense or to be used in the Government's case-in-chief], reports of examinations or tests, and a summary of any expert witness testimony.'" (citations omitted). The Government has not compiled with this Rule.

First, the Government has not produced documents within its custody or control. As stated in *United States v. W.R. Grace*, 401 F.Supp 2d 1069 (D. Montana 2005),

> Information in the hands of other federal agencies must also be turned over if the prosecutor has knowledge of and access to the documents

> sought. "[A] prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [Rule 16(a)(1)(E)]." At the same time, however, a prosecutor may not employ "a mechanical definition of 'government' that would deny to the defendant documents accessible to the prosecution.
>
> The knowledge and access test is met when there exists any information in the possession, custody or control of a federal agency participating in the same investigation of the defendant. Agency involvement in the investigation is a "sufficient, but not necessary factor to show that the prosecution was in 'possession' of the agency's information." Information held by federal agencies not directly involved with the investigation is nonetheless discoverable under Rule 16(a)(1)(E) if the prosecutor has knowledge of and access to the information and the requirements of the rule are otherwise met.

*Id.* at 1074 (citations omitted). Here, because of the nature of the investigation, there are plenty of federal and local agencies involved that fall within the "knowledge and access" test's domain.

Like many other federal gang/racketeering cases, this case was investigated by a multi-jurisdictional task force.[1] Indeed, many of the documents produced to date are (in many cases, still heavily redacted) Detroit Police Department records, Michigan State Police forensic laboratory reports and Wayne County Medical

---

[1] See Exhibit A: "The Detroit One Violent Crime Reduction Initiative: How It Works and How Similar Programs May Benefit Your District" (Department of Justice, Prosecuting Violent Crimes I, June 2017 Volume 65 Number 2). The article, which expressly references this indictment, indicated that "…the USAO asked the federal and loca agencies to join forces and to work together on these investigations in order to bring their respective resources and talents to bear and break down some of the barriers in communication that had existed between federal and local agencies." *Id* at 85.

Examiner reports. There is no evidence that these documents were acquired by subpoena or search warrant. Rather, the documents were likely produced via the multi-jurisdictional cooperation of the Government's federal and local task force.[2] To the extent there are unproduced state or federal agency records, they should be considered within the Government's control, knowledge and access because of the federal/local relationship. Exhibit A, *supra*. To allow the Government to cherry pick which documents it "controls" risking allowing the Government to turn a blind eye to unfavorable information instead of mandating its agents produce all materials related to the investigation. The Court should order the Government to produce records from all task force agencies, federal and local.

By the same token, the U.S. Attorney's Office is obligated to disclose any statements allegedly made by Mr. Mills. That Office cannot merely state that it has produced the report or information physically in its prosecutors' possession. Rather, it must examine what information exists within the federal and local agencies investigating this case. It is unclear whether the Government has done so or will do so absent a court order. The Court should order the Government and all law enforcement agencies to produce any statements allegedly made by Mr. Mills.

---

[2] Mr. Mills concedes this argument is made on information and belief, but it seems fairly clear that the Detroit Police Department records (and the acquisition thereof) are well within the Government's control for purposes of this case given the nature of cooperation between federal and local agencies.

The Government has also failed to produce a full summary of the expert testimony it intends to offer in its case in chief. While the Court has set a cut-off date for the names of the expert witnesses that the Government intends to call at trial, the Court did not excuse the Government from supplying Mr. Mills with reasonable summaries of the testimony it intends to offer (regardless of the identity of the person offering it) or the reports of those experts. Indeed, it strains credulity that the Government has not yet examined or requested a report or summary on the cell tower and/or GPS evidence in its possession. Likewise, the Government has not provided reports (as opposed to results) of how seized electronic devices were searched (i.e., what processes or technology was utilized) such that the Defense could consider a *Daubert* challenge to the technology. The Court should order the Government to produce this information to the defense.

Finally, the Government's Response fails to state why it will not produce mirror images of the devices it seized from Mr. Mills and others.[3] All of the materials stored on the electronic devices are largely documentary or video files. As such, they would be subject to Rule 16. The Government should not be allowed to produce material in an edited manner. Rather, the defense should be provided with mirror images of the devices so (if necessary) they can retain experts

---

[3] This issue was not discussed in the meet and confer given the Government's clear position in its Response.

to review the devices rather than the materials that the Government allegedly "extracted" from them (using technology of unknown reliability).

> **II. The Government continues to produce discovery materials after the discovery cut-off.[4]**

Since the Court ordered discovery cut-off, the Government has continued to produce various materials it presumably intends to use at trial. The productions are as follows:

Produced on 9/29/2018:

- Document Nos. 100520-101186

Produced 10/20/2018:

- Document Nos. 100520-101244 (documents were apparently produced again because some of them were missing from the prior production)
- PH 1191-1258
- Phone Info.zip
- *Edwin Mills Phone.zip*[5]
- Ronell Thompson Jail Calls 2013-2014.zip
- Facebook Subject to PROTECTIVE ORDER (six Facebook accounts)

Produced 10/25/2018:

---

[4] This topic was not brought up during the meet and confer as there is no way to "unring the bell" with respect to dilatory discovery.

[5] The Government seized this cell phone in June, 2016. It is inexplicable why its alleged contents were produced over two years later.

- "10-25-2018 REPLACES 10-20-2018 PRODUCTION.zip\Oct. 25, 2018 which includes Nos. 100520 through 101244 and #PH 1191 thru #PH 1258.

Produced 11/28/2018:
- One video from (Mobile Gas Station)
- Records received from Metro PCS (Bates #095633)
- Document Nos. 097165 through 097246 (Bates Nos 097225, 097228 and 097232 were not produced)
- Document Nos. 101245 through 101283
- Documents PH-1264 through PH-1363 (Photographs from search)
- Documents PH-1364 through PH-1497 (Photographs from search)

Produced 12/14/2018
- recorded interviews of five witnesses (in a "more user friendly format")

Produced 1/4/2019
- Document Nos. 101284 through 101287
- Bates number D1-00135

Produced 1/8/2019
- Documents Nos. 101286 thru 101325
- Documents Nos. 101327 and 101329

Produced 2/5/2019
- .pdf document

Produced 2/7/2019
- Video entitled "Walk a Mile"

Produced 2/25/2019
- "More Social Media"

Much of this material clearly existed prior to the cut-off. It is clear that the Government has produced various materials outside the discovery cut-off that were within its custody and control for a long period of time.[6] No good cause has been shown for the more than tardy production.

The Court has in earlier orders referenced sixty and thirty day pre-trial disclosure dates for *Brady*, *Jenks* and other materials. Given the manner of disclosure to date, Mr. Mills candidly raises the potential that he will be sandbagged later. The defense respects the Court's orders, but respectfully reserves the right to seek leave to file further motions or seek a continuance if the Government's productions in this regard run afoul of the Court's sense of fair play.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

By: s/ Gerald J. Gleeson, II
Gerald J. Gleeson, II (P53568)
Jeffrey A. Crapko (P78487)
840 W. Long Lake Rd., Ste. 150
Troy, MI  48098
Telephone: (248) 267-3296
gleeson@millercanfield.com
crapko@millercanfield.com
*Attorney for Defendant*

---

[6] Indeed, the Government produced an entirely new production (also consisting of much that was produced prior) in May-June, 2018. It is unclear why it did so other than a tacit admission that its prior productions were defective.

        RUHNKE & BARRETT

By: <u>s/   Jean D. Barrett</u>
        Jean D. Barrett
        47 Park Street
        Montclair, NJ 07042
        (973)744-1000
        jeanbarrett@ruhnkeandbarrett.com
        *Attorney for Defendant Edwin Mills*

Dated:  March 19, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2019, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all attorneys of record.

s/ Gerald J. Gleeson, II
Gerald J. Gleeson, II (P53568)
Miller Canfield Paddock & Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com
